1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,              No.  2:08-cr-0417 MCE KJN P

12                Respondent,

13         v.                               FINDINGS AND RECOMMENDATIONS

14   FERNANDO MURGUIA-OCHOA, aka
     FERNANDO CRUZ ARREOLA,
15
                  Movant.
16

17        I.    Introduction

18        Movant[1] is a federal prisoner, proceeding through counsel, with a motion to vacate, set aside

19   or correct his sentence pursuant to 28 U.S.C. § 2255.  Movant challenges his 2012 convictions for

20   conspiracy to knowingly and intentionally distribute over 50 grams of methamphetamine (21

21   U.S.C. § 846, 841 (a)(1) [count two]) and possession with intent to distribute at least 50 grams of

22
23   methamphetamine (21 U.S.C. § 841(a)(1) [count three]).  He is currently serving a total sentence

24   of 262 months.

25        As stated in the November 20, 2015, motion, movant challenges his convictions on the

26   following grounds: (1) trial counsel provided ineffective assistance throughout all critical stages

27   _____

     [1] Movant is referred to throughout the record as either Fernando Murguia-Ochoa or Fernando
28   Cruz Arreola.

                                              1

of the case; (2) the conviction and sentence were obtained in violation of due process; (3) the conviction and sentence are constitutionally infirm; and (4) the indictment was defective. (ECF No. 228.) In supplemental briefing, movant also alleged his prior "controlled substance" convictions in California were no longer felonies with the enactment of Proposition 47 and thus he is "actually innocent" of the career offender enhancement imposed. He further argues that counsel was ineffective for failing to challenge the use of a "controlled substance offense" for purposes of career offender status because his 2006 California conviction does not qualify. For the reasons stated herein, the undersigned recommends that movant's motion, and any supplements thereto, be denied.

II.    Brief Factual Background

In early August 2008, a DEA confidential source met with co-defendant Jose Anguiano at his residence in Oakdale, California. The meeting was monitored and recorded the negotiation between the confidential source and Anguiano for the purchase of 50 pounds of methamphetamine. Numerous subsequent telephone conversations occurred, ultimately resulting in Anguiano agreeing to the sale of 40 pounds of methamphetamine.

On August 29, 2008, Anguiano advised the confidential source the methamphetamine had arrived and could be viewed by the source at his home. DEA surveillance of Anguiano's residence was established before the confidential source was sent to the home. Anguiano introduced the confidential source to co-defendants Miguel Zepeda-Lopez, Joshua Ortega, and Mario Sarrano-Aburto. The confidential source was also introduced to Anguiano's "brother" Fernando Murguia-Ochoa, aka Fernando Cruz Arreola.

All parties went into an adjacent building where the confidential source was to be shown a pound of the methamphetamine. Co-defendant Zepeda-Lopez, in the company of co-defendant Ortega, was observed removing inside corner panels of a gray Toyota Solara parked near the

building; bags were then removed from the vehicle and handed to Ortega by Zepeda-Lopez. Back inside Anguiano pulled one or two packages from a large bag; the contents were poured onto a tray and the confidential source was told he/she was looking at six pounds of high quality methamphetamine.  In response to an inquiry by the confidential source, co-defendant Ortega indicated that he, movant and co-defendant Zepeda-Lopez had transported the methamphetamine to Oakdale the prior evening.  Ultimately, Anguiano provided the confidential source with three pounds of methamphetamine as a representative sample of the available 39 pounds.

After the confidential source left the Oakdale residence, search warrants were executed at the Anguiano residence; Anguiano, movant, Zepeda-Lopez, Sarrano-Aburto and Ortega were detained by law enforcement.  36 pounds of methamphetamine was seized from the building adjacent to the primary residence; laboratory analysis revealed it contained more than 1.5 kilos of methamphetamine (actual).

III.     Relevant Procedural Background

Following indictment, movant pled guilty on September 29, 2011, to conspiring to distribute at least 50 grams of methamphetamine (count two) and possession with intent to distribute at least 50 grams of methamphetamine (count three).  (ECF No. 130.)  On January 5, 2012, the district court sentenced him to 292 months in prison.  (ECF No. 156.)  Movant appealed the judgment, and the Ninth Circuit Court of Appeals vacated the judgment and remanded the matter for resentencing.  It held the district court did not have a sufficient basis on which to conclude movant's 1989 conviction was a categorical crime of violence.  (ECF No. 188.)

On resentencing, the district court again sentenced movant to a term of 292 months in prison, finding his prior conviction pursuant to California Penal Code section 245 to be a crime of violence.  (ECF Nos. 200 & 205.)  An appeal following resentencing was unsuccessful.  (ECF No. 206.)

3

On February 19, 2015, movant filed a motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(2). (ECF No. 208.) Ultimately, on March 20, 2015, the district court reduced movant's sentence from 292 months to 262 months. (ECF Nos. 214 & 215.)

Movant filed, pro se, the instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 on November 20, 2015. (ECF No. 228.) Before the government responded, movant filed a pro se supplement to the motion. (ECF No. 237.) With the impending appointment of counsel for movant, the pro se supplemental brief was disregarded and a supplemental briefing schedule was set. (ECF Nos. 239 & 241.) The government filed its opposition to the original motion on August 17, 2016. (ECF No. 244.) Thereafter, supplemental briefs were filed by both parties in accordance with the modified briefing schedule. (ECF Nos. 247, 251, 254.)

On October 19, 2018, the Ninth Circuit issued an order denying movant's pro se petition for a writ of mandamus, without prejudice to the filing of a new petition if this court had not acted on the pending motion within 45 days. (ECF No. 256.)

On December 12, 2018, the undersigned issued an order (1) vacating the earlier order disregarding movant's pro se supplement, and (2) directing the government to file an opposition or statement of non-opposition to movant's pro se supplement within fourteen days; any reply by movant was to be filed within seven days thereafter. (ECF No. 257.)

On January 9, 2019, counsel for movant filed a brief in response to the court's order, acknowledging a recent decision in the Ninth Circuit effectively negates movant's claim pertaining to the 1989 conviction not amounting to a crime of violence for purposes of sentencing. (ECF No. 258.)[2]

---

[2]Contrary to movant's contention prior to counsel for movant withdrawing the claim, movant's sentence was not unconstitutionally enhanced under <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015). <u>Johnson</u> considered language in the Armed Career Criminal Act ("ACCA").

The government filed its anticipated response on January 15, 2019 (ECF No. 260) and movant filed a reply on January 18, 2019 (ECF No. 262).

The undersigned will now address the following claims:  (1) ineffective assistance of counsel throughout all critical stages of the criminal prosecution; (2) the conviction and sentence are constitutionally infirm (citing McFadden); (3) the indictment is defective (citing Alleyne) (ECF No. 228); (4) the effect of California's Proposition 47; and (5) ineffective assistance of counsel for a failure to object to the 2006 California conviction for purposes of career offender enhancement (ECF Nos. 237& 262).

IV.     Legal Standard

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255, filed in the court that imposed sentence.  Tripati v. Henman, 843 F.2d 1160, 1162 (9th Cir. 1988).  Under § 2255, the federal sentencing court may grant relief if it concludes that the prisoner was sentenced in violation of the Constitution or laws of the United States.  United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999) (citing 28 U.S.C. § 2255).  Relief is warranted only where a movant has shown "a fundamental defect which inherently results in a complete miscarriage of justice …."  Davis v. United States, 417 U.S. 333, 346 (1974) (quoting

---

The ACCA imposes a mandatory minimum sentence of 15 years for a defendant who violates 18 U.S.C. § 922(g) and "has three previous convictions by any court ... for a violent felony or serious drug offense, or both." 18 U.S.C. § 924(e)(1).  The Supreme Court examined the definition of "violent felony" and held that a portion of that definition known as the "residual clause" is void for vagueness. Imposing an increased sentence under the residual clause of the definition of "violent felony" violates the Constitution's guarantee of due process.  Id. at 2563. The Supreme Court expressly confined its holding to this particular portion of the statute and confirmed that its holding does not apply to the "serious drug offense" clause or the remainder of the "violent felony" definition.  Id.

But Johnson is not applicable here because movant was not sentenced under the residual clause of the violent felony definition of the ACCA. See United States v. Ruiz-Diaz, 668 Fed.Appx. 289, 290 (9th Cir. 2016) ("Because the [sentencing] enhancement was not predicated on a residual clause like the one struck down in *Johnson*, there is no arguable issue as to whether [defendant's] sentence is illegal.").

1    <u>Hill v. United States</u>, 368 U.S. 424, 429 (1962)).

2       V.      <u>Discussion</u>

3       *Ineffective Assistance of Counsel*

4       Movant complains that defense counsel provided ineffective assistance of counsel

5 throughout his representation, thus entitling him to relief.

6       The Sixth Amendment standard for analyzing an ineffective assistance of counsel claim is

7 well established. To prevail on a claim of ineffective assistance of counsel, a petitioner must

8 show that his trial counsel's performance "fell below an objective standard of reasonableness"

9 and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result

10 of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 668, 687–88,

11 694 (1984).

12       Under the first prong of the <u>Strickland</u> test, a petitioner must show that counsel's conduct

13 failed to meet an objective standard of reasonableness. <u>Strickland</u>, 466 U.S. at 687. There is "a

14 'strong presumption' that counsel's representation was within the 'wide range' of reasonable

15 professional assistance." <u>Harrington v. Richter</u>, 562 U.S. 86, 104 (2011) (quoting <u>Strickland</u>, 466

16 U.S. at 689). A petitioner must rebut this presumption by demonstrating that his counsel's

17 performance was unreasonable under prevailing professional norms and was not the product of

18 "sound trial strategy." <u>Strickland</u>, 466 U.S. at 688–89. Judicial scrutiny of defense counsel's

19 performance is "highly deferential," and thus the court must evaluate counsel's conduct from his

20 or her perspective at the time it occurred, without the benefit of hindsight. <u>Id</u>. at 689.

21       The second prong of the <u>Strickland</u> test requires a petitioner to show that counsel's

22 conduct prejudiced him. <u>Strickland</u>, 466 U.S. at 691–92. Prejudice is found where "there is a

23 reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

24 would have been different." <u>Id</u>. at 694. A reasonable probability is one "'sufficient to undermine

25 confidence in the outcome.'" <u>Summerlin v. Schriro</u>, 427 F.3d 623, 640 (9th Cir. 2005) (quoting

26 <u>Strickland</u>, 466 U.S. at 693). "This does not require a showing that counsel's actions 'more likely

27 than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a

28 more-probable-than-not standard is slight and matters 'only in the rarest case.'" <u>Richter</u>, 562 U.S.

at 112 (quoting <u>Strickland</u>, 466 U.S. at 693). "The likelihood of a different result must be substantial, not just conceivable." <u>Id</u>. And more particularly in a case involving an ineffective assistance of counsel claim allegedly resulting in a plea of guilty, movant must show there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985).

Relevant Background

To begin, movant contends he complained prior to his guilty pleas that counsel was providing ineffective assistance of counsel. The undersigned provides the following background on the issue for appropriate context.

Initially, movant filed a motion for substitution of counsel on May 12, 2009. (ECF No. 36.) The court's docket indicates the motion was "vacated as moot" in March 2011. (ECF No. 81 [minutes].)

On June 21, 2010, a letter was filed with the court wherein movant complained about communication with defense counsel. More particularly, movant complained that counsel had not met with him or joined in a motion to suppress filed by counsel for co-defendant Anguiano. (ECF No. 61.) However, the court's records indicate defense counsel had in fact filed a joinder on movant's behalf six months earlier, or on December 21, 2009. (<u>See</u> ECF No. 56.) In that filing, counsel noted he has been in trial for the previous three weeks and planned to meet with movant two days later and would file a declaration with the court in support of the joinder thereafter. (ECF No. 56.) A hearing on the suppression motion was continued to March 2010. (ECF No. 57.) At the March 11, 2010, hearing, movant and other co-defendants withdrew their respective joinders to the pending motion and a new briefing schedule was set. The minutes for that proceeding also state: "The Court ordered a pre-plea report be prepared by probation for defendant Ochoa regarding the criminal history category only" and that movant was ordered to return May 13, 2010. (ECF No. 58.) On May 13, 2010, a new briefing schedule was issued concerning the still-pending suppression motion. (ECF No. 60.)

Following movant's June 21, 2010, letter, the hearing on the motion was continued at the July status conference and scheduled for September 9, 2010. (ECF No. 64.) Counsel for movant

7

then filed a joinder in the Anguiano motion to suppress on August 18, 2010. It stated, in pertinent part, "The Defendant filed a request directly with the Court on June 21, 2010, to rejoin the Motion to Suppress Evidence. This Notice of Joinder formalizes that request." (ECF No. 65.)

Movant then sent another letter to the court, filed September 2, 2010, wherein he indicated counsel had "not given" him a copy of the "discovery" in the case. Movant also complained about counsel's strategy concerning the motion to suppress. He wanted "to see if [it was possible to] be granted" a new attorney who would "make time to look into" his case and review discovery with him. (ECF No. 66.)

On March 15, 2011, movant sent another letter to the court asserting defense counsel had taken no interest in his case, particularly regarding the motion to suppress as counsel failed to obtain a declaration from movant in support of that motion. (ECF No. 78; see also ECF No. 228 at 56 [Ex. C(4)].) At a hearing on March 24, 2011, the court's noted, as referenced above, that movant's motion for substitution of counsel "was vacated as moot." (ECF No. 81.)

The motion to suppress evidence concerning movant, and co-defendants Anguiano and Zepeda-Lopez, was argued before the district court on March 31, 2011. Following oral argument, the motion was denied, and the matter set for jury trial on October 17, 2011. (ECF Nos. 84 & 175.)

On August 2, 2011, movant filed a motion for substitution of counsel. (ECF No. 124; see also Doc. 228 at 53-54, 60 [Ex. C(2)&(7)].) In an August 8, 2011, order, the district court scheduled an *in camera* hearing pertaining to movant's request. (ECF No. 109 [sealed].) The motion was heard *in camera* on September 6, 2011. The district court heard from defense counsel and ultimately denied movant's request for new counsel, as well as defense counsel's request for a second opinion of the case. (ECF No. 116 [sealed].)

On September 29, 2011, movant entered pleas of not guilty to counts two and three of the indictment. (ECF Nos. 130 & 174.)

Analysis

Movant complains counsel failed to explain the differences between "pleading 'openly'" versus with a plea agreement, the benefit of proceeding to trial and confronting witnesses as

8

1    opposed to entering guilty pleas, possible defenses "for trial and witness interviews," and

2    "information concerning the Sentencing Guidelines and applicable enhancements." (ECF No.

3    228 at 18.)

4        First, other than movant's self-serving statements, there is nothing in this record to

5    indicate defense counsel failed to communicate with movant on these issues. Certainly, movant

6    has pointed to nothing in the record, save for his letters, to support his claim. There are however

7    stipulations and filings in the record that indicate counsel was in fact communicating with

8    movant. (See, e.g., ECF Nos. 39 & 64.) Moreover, the undersigned's scrutiny of counsel's

9    performance is "highly deferential." Strickland, 466 U.S. at 689. Nothing in the record

10   overcomes the deference properly accorded to defense counsel here.

11       The Ninth Circuit has held that when a defendant voices a seemingly substantial

12   complaint about counsel, the judge should make a thorough inquiry into the reasons for the

13   defendant's dissatisfaction. United States v. Robinson, 913 F.2d 712, 716 (9th Cir. 1990). Here,

14   movant's letters of June 21, 2010, and March 12, 2011, make no substantial complaint about

15   counsel because the record contradicts the content. (See ECF Nos. 61 & 78.) Movant's

16   September 2, 2010 letter asks the court to appoint counsel who has "more time," but goes on to

17   relate the content of conversations purportedly had between counsel and movant concerning the

18   motion to suppress and the fact defense counsel made his client aware of his competing

19   obligations to other clients. (ECF No. 66.) As a result, none of the letters amounts to a

20   substantial complaint requiring inquiry by the court.

21       To the degree movant appends copies of letters sent to defense counsel in support of his

22   claim (ECF No. 228 at 44-50 [Ex. B(1)-(6)]), some of those exhibits belie movant's claim.

23       Significantly, movant complains counsel did not adequately explain sentencing matters to

24   him. However, in an exhibit in support of the instant motion dated May 16, 2011 (prior to his

25   guilty pleas), movant wrote the following to defense counsel:

26           I have a Minimum Mandatory of 20 yrs for my priors plus my
             Criminal History this does not include any enhancements my case
27           carries. Let's say I take a "Plea open" or I plea to the honorable
             "Judge England" I will end up with 30 yrs, plus I am also aware of
28           'Probation' and how Much and Can Affect me.

9

(ECF No. 228 at 44.)  It appears from movant's own exhibit that he had a very clear understanding of the potential sentence he faced, how his criminal history and applicable enhancements affected the mandatory minimums, and that a plea could net him a sentence of nearly thirty years in prison.  Moreover, in a letter dated about three weeks later on June 5, 2011, movant opens his letter with the following:  "This letter is to inform you that I appreciate your Representation …."  (ECF No. 228 at 47.)  And, following a request for a visit to discuss any plea offer or "Conditional Plea" of July 10, 2011 (ECF No. 228 at 48), movant wrote: "Thank you for today's representation.  Today I [really] felt like I had a counsel that was fighting and pleading for my best interest.  Thank you …."  (ECF No. 228 at 49.)

In his July 10, 2011, letter to defense counsel, movant wrote the following:

> I know we mentioned my Criminal History being Overstated but I need you to Come and Explain to me exactly where I stand in My Criminal History and also Explain to me If indeed that conditional Plea is gonna benefit me because I need to know who Much time I am Really looking at with This Conditional "Plea."

(ECF No. 228 at 48.)  Relatedly, during the change of plea hearing in September, defense counsel indicated the following:

> MR. BRACE: Your Honor, I have been in trial for three weeks, but I did get a chance to go up and speak to Mr. Murguia Ochoa yesterday evening for quite a while. It's my understanding he's prepared to enter an open plea this morning. As the Court's aware, there has been a delay in making this decision because of his belief -- sorry – that even if he pled guilty, he would still have the right to appeal the decision of this court to deny his motion to suppress.
>
> I have gone over that very, very thoroughly with him, very thoroughly with him that that's not the law. He's asked me to ask you again for a conditional plea that allows him to preserve that right. And, as I told him yesterday evening, that's not the case. It's an open plea and, based on case law that I've researched, once you enter a plea, you no longer have a right to come back later and address those issues.
>
> So I believe he will be convinced of that in a moment and be prepared to go forward with his plea openly to the two counts he's charged with.

(ECF No. 174 at 3-4.)  Thereafter, the court ensured movant understood he was not offered a conditional plea and that he was in fact entering an open plea.  (Id. at 4-5.)  Thus, the record establishes that defense counsel discussed with movant the type of plea available to him and it is

reasonable to infer he also discussed with movant the benefits of entering guilty pleas versus going to trial. Movant's claims simply lack merit. Defense counsel did not perform deficiently. Strickland, 466 U.S. at 688-89. Nor has movant alleged that had counsel performed as asserted that he would not have pled guilty and insisted on going to trial. As a result, he has not established prejudice. Hill v. Lockhart, 474 U.S. at 59.

To the degree movant's ineffective assistance of counsel claim is based upon some failure of defense counsel related to the motion to suppress, it is without merit. Defense counsel did in fact file a joinder in the motion to suppress and filed a declaration on movant's behalf as well. (ECF Nos. 65 & 80.) That motion was argued and considered by the district court prior to its denial. The court expressly considered the argument that the warrant was unconstitutional because law enforcement was not forthcoming regarding the fact that two separate residences were on the property. That argument was not persuasive because the separate residences shared a single address, and law enforcement officers were not aware that one of the multiple buildings on the property was also used as a residence at the time the warrant was obtained. (See ECF No. 175.) Hence, defense counsel's actions allowed for the court to consider movant's argument in the motion to suppress and it is clear from the record that the denial of the motion was not the result of counsel's unreasonable performance. Strickland, 466 U.S. at 688-89. In any event, movant cannot establish prejudice on this issue because there is no reasonable probability of a different outcome, even assuming counsel had performed deficiently. Id. at 694. Notably too, "[l]itigation tactics are decisions generally left to defense counsel." United States v. Smith, 282 F.3d 758, 763 (9th Cir. 2002). See also Hill v. Lockhart, 474 U.S. at 59.

And, to the degree movant's complaint can be interpreted to concern the district court's ruling denying his request for substitution of counsel and/or declaring the earlier motion to be moot, such complaints not cognizable here. Certainly, there is nothing in the record to indicate the court abused its discretion in denying movant's request.

In sum, and despite the numerous assertions in movant's affidavit to the instant motion (ECF No. 228 at 30-31), his claims of ineffective assistance of counsel are refuted by movant's own exhibits and by the record in this case. There is no basis for relief and this claim should be

11

1  denied.  <u>Davis v. United States</u>, 417 U.S. at 346.

2  Voluntariness of Pleas

3      To the degree movant claims he received ineffective assistance of counsel and hence his

4  guilty pleas were not knowing or voluntary, the record also belies this claim too.

5      "A habeas petitioner bears the burden of establishing that his guilty plea was not voluntary

6  and knowing." <u>Little v. Crawford</u>, 449 F.3d 1075, 1080 (9th Cir. 2006).  To determine the

7  voluntariness of a plea, the court must "look to the totality of the circumstances, examining both

8  the defendant's 'subjective state of mind' and the 'constitutional acceptability of the external

9  forces inducing the guilty plea.'" <u>Doe v. Woodford</u>, 508 F.3d 563, 570 (9th Cir. 2007) (quoting

10 <u>Iaea v. Sunn</u>, 800 F.2d 861, 866 (9th Cir. 1986)).

11     "Findings made by the judge accepting the plea 'constitute a formidable barrier in any

12 subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption

13 of verity.'" <u>Doe</u>, 508 F.3d at 571 (citing <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977)).

14 Therefore, movant's statements at his plea hearing "properly constitute an 'imposing' barrier to

15 collateral attack." <u>Chizen v. Hunter</u>, 809 F.2d 560, 562 (9th Cir. 1986).

16     At the change of plea hearing on September 29, 2011, and as excerpted above, defense

17 counsel initially addressed movant's belief and/or desire to subsequently challenge on appeal the

18 district court's denial of the motion to suppress by entering a conditional plea; the court clarified

19 movant understood a conditional plea was not an option as the only option involved open guilty

20 pleas to counts two and three.  (ECF No. 174 at 3-5.)  Thereafter, the court obtained clarification

21 concerning movant's legal name (<u>id.</u> at 5-7) before advising him that if he did not understand any

22 questions posed or if he wished to consult with his attorney further, he need only let the court

23 know (<u>id.</u> at 7).  After declaring he was not under the influence of any alcohol, drug or medication

24 that might affect him during the proceeding (<u>id.</u> at 7-9), movant expressly agreed that he was

25 satisfied with the assistance provided by his attorney and that he was voluntarily entering his

26 pleas because he was "in fact guilty of the crimes set forth in Counts Two and Three of the

27 indictment."  (<u>Id.</u> at 9.)  Movant acknowledged no one had made any promises to him, nor had

28 they threatened him, regarding the pleas.  (<u>Id.</u> at 9.)  He was advised and indicated his

12

understanding that the maximum potential sentence was life in prison (id. at 10-11) and he

acknowledged the following: that he understood his plea might affect his immigration status (id.

at 9-10); that the court would consider the nature and circumstances of the offense as well as the

history and characteristics of the defendant during sentencing (id. at 11-12); that he discussed

with his attorney how the United States Sentencing Guidelines and sentencing laws might apply

to his case (id. at 12); that in some instances the court could impose a sentence greater than or less

than the sentencing guidelines (id. at 12); that he understood he was giving up certain

constitutional rights identified by the court by pleading guilty (id. at 13-14); that he understood

the elements involved in the crimes to which he was pleading guilty (id. at 14-15); that he agreed

with the factual bases represented in Exhibit A to the draft plea agreement prepared by the

government, as referenced and shared with movant during the hearing (id. at 15-17).  The court

concluded that movant's pleas were knowing and voluntary. (Id. at 18-19.)

The record establishes movant's guilty pleas were knowing and voluntary.  Movant did

not overcome his burden regarding the "strong presumption of verity" afforded his declarations as

delineated above.  Doe, 508 F.3d at 571; see also Davis v. United States, 417 U.S. at 346.

*McFadden Does Not Apply*

Next, movant contends the district court failed to make required individualized findings

pertaining to the "type or quantity of drug in the charged conspiracy."  He relies upon McFadden

v. United States, 135 S.Ct. 2298 (2015), to support his claim.  He complains the court failed "to

hold the government to its congressionally specified burden of proof, and to explicitly accept a

plea of guilty on that congressionally specified burden."  (ECF No. 228 at 24-26.)

In McFadden, the Supreme Court addressed the mens rea required for a conviction under

21 U.S.C. § 841(a)(1), when the controlled substance at issue was a controlled-substance

analogue (there, bath salts).  McFadden v. United States, 135 S. Ct. at 2302.  The court held

§ 841(a)(1) required the government to prove the defendant knew he was dealing with a

controlled substance, meaning he either knew the substance was controlled under the Controlled

Substances Act or Analogue Act or knew the specific features of the substance that made it a

controlled substance analogue.  Id.

The McFadden court clarified that under § 841(a)(1), a defendant need know "only that the substance he is dealing with is some unspecified substance listed on the federal drug schedules." Id. at 2304. The high court held that knowledge can be established either "by evidence that a defendant knew that the substance with which he was dealing is some controlled substance – that is, one actually listed in the federal drug schedules or treated as such by operation of the Analogue Act – regardless of whether he knew the particular identity of the substance," or "by evidence that the defendant knew the specific analogue he was dealing with, even if he did not know its legal status as an analogue." Id. at 2305. In order to prove the latter, the government must show that the defendant knew the substance had a chemical structure "substantially similar to the chemical structure of a controlled substance in schedule I or II," has a "stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the effect of a controlled substance in schedule I or II," and that the defendant "represented or intended the substance to have that effect with respect to a particular person." Id., internal quotation marks omitted.

Unlike McFadden, the controlled substances involved in movant's crimes do not involve analogue drugs. Rather, his crimes involve methamphetamine; methamphetamine is a non-analogue substance. "Methamphetamine is a schedule II controlled substance. 21 C.F.R. § 1308.12(a), (d)(2)." United States v. Jefferson, 791 F.3d 1013, 1015 (9th Cir. 2015). McFadden did not change the substantive law as to a non-analogue substance. See McFadden v. United States, 135 S. Ct. at 2304 (reiterating the well-established mens rea requirement for knowledge of typical, non-analogue controlled substances). Nothing in McFadden imposes upon the district court a requirement of making individualized findings with respect to the type or quantity of drug involved.

Furthermore, the Government did in fact establish the elements of its conspiracy charge against movant by his guilty plea to count two of the indictment. As pointed out in its brief, the Government was required to prove "an agreement to accomplish an illegal objective" and "the intent to commit the underlying offense," in order to establish a drug conspiracy. United States v. Reed, 575 F.3d 900, 923 (9th Cir. 2009).

When he pled guilty in September 2011, movant was advised and acknowledged an understanding of the elements of his crimes:

> THE COURT: … May I have the essential elements, please, of Counts Two and Three of the indictment so that I can be assured that Mr. Arreola understands them all, please.
>
> MR. HITT: Yes, Your Honor.
>
> With respect to Count Two, conspiracy to distribute and possess with intent to distribute at least 50 grams of methamphetamine actual, the government must prove the following:
>
> First, beginning no later than August 11, 2008, and continuing through August 29, 2008, there was an agreement between the defendant and co-defendants Miguel Zepeda Lopez, Jose Anguiano and others, to distribute or possess with intent to distribute at least 50 grams of methamphetamine actual. And, second, that the defendant became a member of the conspiracy knowing that one of its objects was to distribute or possess with intent to distribute at least 50 grams of methamphetamine actual, and that Mr. Arreola intended to help accomplish such distribution or possession with intent to distribute.
>
> As for Count Three, possession with intent to distribute at least 50 grams of methamphetamine actual, the government must prove the following:
>
> First, on or about August 29, 2008, Mr. Arreola knowingly possessed at least 50 grams of methamphetamine actual; and, second, he possessed the methamphetamine with the intent to deliver it to another person.
>
> THE COURT: Do you understand the elements of Counts Two and Three at this time?
>
> THE DEFENDANT: Yes.

(ECF No. 174 at 14-15.) The facts pertaining to the elements outlined above were also expressly agreed to by movant at the time of his plea when the court made two pages of the draft plea agreement specifically pertaining to the factual basis a court exhibit, after movant and counsel were given an opportunity to review that exhibit. (Id. at 15-18.)

A review of the factual basis to the draft plea agreement establishes the Government met its obligations. In part, it states that on August 11, 2008, movant participated in negotiations or discussions with co-defendant Anguiano and the confidential source regarding "the purchase of

50 pounds of methamphetamine" pending future delivery. (ECF No. 263 at 2; see also ECF No. 244 at 23.) On August 29, 2008, at the Anguiano residence, the confidential source observed what movant and his co-defendants identified as 39 pounds of high-quality methamphetamine. The confidential source left the residence with 3 pounds of that methamphetamine and a subsequent search of the property resulted in the seizure of 36 pounds of methamphetamine by law enforcement. (ECF No. 263 at 2-3.) Finally, the factual basis notes that "DEA lab analysis of the methamphetamine seized revealed that it contained more than 1.5 kilograms of methamphetamine (actual)." (ECF No. 263 at 3.)

Simply stated, McFadden does not apply here. Furthermore, the record establishes the Government met its applicable burden. Accordingly, movant is not entitled to relief and his claim should be denied. Davis v. United States, 417 U.S. at 346.

*Challenge to the Indictment – Alleyne*

Next, movant asserts the indictment here is defective because "any fact that triggers a mandatory minimum must (first) be alleged in the indictment, and (second) admitted by the defendant …" and that "each alleged 'object' was not assigned a specific threshold amount in the conspiracy for each defendant" rendering his sentence unconstitutional, citing Alleyne v. United States, 570 U.S. 99 (2013). (ECF No. 228 at 27-28.)

Because movant admitted the quantity-based facts requiring the imposition of the mandatory-minimum sentence as part of his open plea, there are no fact issues implicating Alleyne. See United States v. Jefferson, 791 F.3d at 1016-17 & n.3 (rejecting the defendant's argument that under Alleyne and Apprendi v. New Jersey, 530 U.S. 466 (2000), the government must prove that the defendant knew the specific type and quantity of the drugs he imported in order to trigger the ten-year mandatory minimum; explaining that when Alleyne is implicated, the facts subject to Alleyne must be proved to a jury beyond a reasonable doubt or "admitted by the defendant"; further explaining that a "defendant who enters a guilty plea waives his right to a trial by jury, and therefore also waives Alleyne and Apprendi's protections of that right" [citation omitted]).

////

Because movant pled guilty to the charges brought against him, he admitted certain facts pertaining to the type and quantity of drugs involved, thereby waiving any Alleyne and Apprendi protections. United States v. Jefferson, 791 F.3d at 1016-17. As a result, movant is not entitled to relief and his claim should be denied. Davis v. United States, 417 U.S. at 346.

*Applicability of California's Proposition 47 to Movant's Case*

Movant contends in his supplemental motion that he is not subject to the career offender provisions for purposes of federal sentencing because his prior felony conviction in California for possession of pseudoephedrine with intent to manufacture methamphetamine can be reduced to a misdemeanor pursuant to California Penal Code section 1170.18. (ECF No. 237 at 2-4.)

But, whether a defendant's prior state conviction is a qualifying conviction under the Sentencing Guidelines is a question of federal, not state, law. See United States v. Norbury, 492 F.3d 1012, 1014 (9th Cir. 2007). Significantly, when calculating criminal history points, the sentencing court "looks to a defendant's status at the time he commits the federal crime." United States v. Yepez, 704 F.3d 1087, 1090 (9th Cir. 2012) (en banc) (per curiam); U.S.S.G. § 4A1.2. At the time movant committed the instant federal offenses, he had a prior final state felony drug conviction. A reclassification under Proposition 47 did not alter these "historical fact[s]." See Yepez, 704 F.3d at 1090 (holding that a state court's termination of probation "nunc pro tunc" as of the day before a defendant committed his federal crime has "no effect on [the] defendant's status at the moment he committed the federal crime"); see also United States v. Salazar-Mojica, 634 F.3d 1070 (9th Cir. 2011) (holding that a state court's relabeling of a conviction from a felony to a misdemeanor has no impact on the Guidelines calculation).

In United States v. Diaz, 838 F.3d 968 (9th Cir. 2016), the Ninth Circuit specifically held that California's Proposition 47 "does not undermine a prior conviction's felony-status for purposes of [18 U.S.C.] § 841." Id. at 975. In Diaz, the court made clear that the § 841 inquiry requires "only that a defendant have committed his federal crime after" the qualifying federal drug offense conviction became final." Id. at 973 (quoting 21 U.S.C. § 841(b)(1)(A)) (internal citations omitted). In other words, the event triggering application of the enhancement is the finality of the conviction. Here, it is undisputed that, at the time of his federal sentencing,

movant's prior state felony drug conviction was final.  See Williams v. United States, 651 F.2d 648, 649-51 (9th Cir. 1981) (state convictions no longer subject to direct appellate review are final).

Thus, pursuant to Diaz, movant's prior conviction remains a qualifying offense under § 841.  That this conviction was or may be later reclassified as a misdemeanor is not the basis of any legal error associated with the conviction nor is it a showing of actual innocence.  Therefore, movant is not entitled to relief and the claim should be denied.  Davis v. United States, 417 U.S. at 346.

*Ineffective Assistance of Counsel for Failure to Challenge Prior Conviction*

In his supplemental motion, movant asserts that defense counsel was ineffective for failing to challenge the court's use of his prior conviction for possession of pseudoephedrine with intent to manufacture methamphetamine because he was sentenced to 180 days in jail rather than a term of imprisonment exceeding one year, therefore, for purposes of federal sentencing the conviction was "clearly 'open' for attack."  (ECF No. 237 at 4-6.)  In supplemental briefing by appointed counsel, the challenge concerns a particular subdivision of the California statute at issue and its use as a qualifying controlled substance offense in federal sentencing proceedings.  (ECF No. 262.)

Procedural Default

The Government initially contends movant's claim is procedurally defaulted, arguing "the nature of defendant's challenge to his 2006 felony conviction is a non-constitutional sentencing error that could have been raised on direct appeal."  (ECF No. 260 at 6.)

The undersigned disagrees with the Government's characterization of the claim.  Movant plainly contended counsel was ineffective for failing to challenge a prior conviction referenced in paragraph 42 of the presentence report.  (ECF No. 237 at 4-6.)  While the issue involves sentencing and any challenge would've addressed the sufficiency of the prior conviction for purposes of sentencing, at base, the claim remains one of ineffective assistance of counsel.  And, the procedural default rule does not apply to claims of ineffective assistance of counsel not raised on direct appeal, even if the claims could have been raised on direct appeal.  See, e.g., Massaro v.

18

United States, 538 U.S. 500, 504 (2003) ("an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal"). The undersigned therefore declines to find that movant's claim of ineffective assistance of counsel is procedurally defaulted.

Relevant Background Information

The paragraph that is the subject of the instant dispute reads in its entirety:

| 42. | 02/28/2006 (Age 36) | Possession of Pseudoephedrine with Intent to Manufacture Methamphetamine; Los Angeles County Superior Court, Dkt. KA 07423304 | 06/26/2006: 3 years probation, 180 days jail 07/20/2006: deported | 4A1.1(b) | **2** |

The defendant, using the name Miguel Ochoa, pled no contest and was represented by counsel. According to the one-count felony complaint, the defendant, his then-girlfriend Ruby Flores and two other individuals, possessed the above-noted reducing agent with the intent to manufacture methamphetamine.

(Presentence Report dated 12/15/2011 at 13.)

On January 5, 2012, the original sentencing hearing was held in this matter. More specifically, the district court noted the PSR offense level of 35, a criminal history category of VI, and an advisory guidelines range of 292 to 365 months (ECF No. 177 at 4-5, 25), before hearing and considering argument by defense counsel and the Government. (Id. at 25-30, 31-33.) Following allocution (id. at 33-34), movant was sentenced to a term of 292 months in prison. (Id. at 34-36.)

On remand from the Ninth Circuit, directing the district court to reconsider movant's prior conviction pursuant to California Penal Code section 245 (a)(2) and whether it was a crime of violence, resentencing occurred on December 5, 2013. (ECF No. 205.) The court heard argument from counsel for movant who maintained a sentence of 262 months was more appropriate, however, the district court ultimately concluded the 1988 California conviction had been proven and re-imposed a 292-month sentence. (ECF No. 205 at 3-11.)

////

19

In February 2015, movant filed a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(2), seeking a reduction of 30 months following a retroactive amendment to the drug quantity table guideline, reducing the applicable base offense level. (ECF No. 208.) The Government opposed movant's motion (ECF No. 210), but the district court granted the motion and an amended judgment issued imposing a 262-month sentence. (ECF No. 215.)

In support of the instant motion and this argument, counsel for movant filed a Declaration on January 18, 2019, appending a copy of a "criminal case summary" he obtained by accessing the Los Angeles County Superior Court's website pertaining to movant's 2006 conviction. That document indicates that Fernando Cruz pled guilty to a violation of California Health and Safety Code section 11383(c)(2) on May 18, 2006. On June 26, 2006, he was sentenced to 90 days in jail followed by three years of probation. (ECF No. 262-1.)

<u>Applicable Law & Analysis</u>

Initially, it is important to note that the actual jail or prison time imposed at sentencing representing punishment for a prior state conviction is not determinative of its use as a felony "controlled substance offense." Rather, the determinative factor is whether the conviction involves a felony punishable by a term exceeding one year. In other words, it's not what term the trial court actually imposed at sentencing, but whether the statutory punishment for that felony conviction calls for a term of imprisonment exceeding one year. § 4B1.1, Application Notes/Definitions ("'Prior felony conviction' means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year … regardless of the actual sentence imposed"). Therefore, whether movant was sentenced to 90 or 180 days is irrelevant. The prior offense is *punishable* by a term of two, four or six years. Cal. Health & Saf. Code, § 11383(c)(2).

The core remainder of movant's claim is that counsel failed to challenge his 2006 conviction pursuant to California Health and Safety Code section 11383 because, he alleges, a conviction under subdivision (c)(2) of that section "is not a controlled substance offense." (ECF No. 262 at 5.)

////

20

The 2006 version of California Health and Safety Code section 11383 provides, in pertinent part:

> (c)(2) Any person who, with intent to manufacture methamphetamine or any of its analogs specified in subdivision (d) of Section 1055, possess hydriodic acid or a reducing agent or any product containing hydriodic acid or a reducing agent is guilty of a felony and shall be punished by imprisonment in the state prison for two, four, or six years.

To prevail on an ineffective assistance of counsel claim, as outlined more particularly above, movant must show that counsel performed with deficiency and that the deficiency prejudiced him. Strickland, 466 US. 688-94.

The United States Sentencing Guidelines provide a sentencing enhancement for offenders who, while at least eighteen years old, commit a crime of violence or a controlled substance offense, and have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). In determining whether a prior conviction qualifies as such a crime, courts employ what is known as the "categorical approach." United States v. Leal-Vega, 680 F.3d 1160, 1163 (9th Cir. 2012). Under that approach, courts "do not examine the facts underlying the prior offense but look only to the fact of conviction and the statutory definition of the prior offense." United States v. Pimentel–Flores, 339 F.3d 959, 968 (9th Cir. 2003) (internal citation omitted). Moreover, under that approach, "[i]f the statutory definition of the prior offense criminalizes conduct that would not constitute" either a crime of violence or a controlled substance offense, then that prior conviction is not categorically a "crime of violence" or a "controlled substance offense." Leal-Vega, 680 F.3d at 1164.

"Some states, however, have a more complicated (sometimes called "divisible") structure, making comparison of elements harder." Mathis v. United States, 136 S. Ct. 2243, 2249 (2016). The "modified categorical approach" is "for use with statutes having multiple alternative elements. [Citation.] Under that approach, a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of. [Citations.] The court

can then compare that crime, as the categorical approach commands with the relevant generic offense." Id. at 2249. But, if a statute is not divisible, then courts may not apply the modified categorical approach. See Descamps v. United States, 570 U.S. 254, 258 (2013); United States v. Lee, 821 F.3d 1124, 1128 (9th Cir. 2016).

First, the undersigned notes that movant failed to object or raise this issue with the district court. There is no claim by movant that he informed counsel that in 2006 he pled guilty to something other than alleged, nor does he even allege he raised the issue of having only been sentenced to 90 days rather than the 180 days reflected in the PSR for that conviction. In fact, during sentencing, movant agreed with the district court that he had reviewed the PSR with his attorney, and counsel indicated they had done so "in detail." (ECF No. 177 at 4:1-15.)

The undersigned is not inclined to find fault with counsel for any failure to raise the issue as framed by movant here where the record contains nothing to indicate movant advised counsel of his specific concern nor does he allege he did so. Judicial scrutiny of counsel's performance "must be highly deferential," and this Court must guard against the distorting effects of hindsight and evaluate the challenged conduct from counsel's perspective at the time in issue. Strickland, 466 U.S. at 689; see also Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) ("'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms,'" quoting Strickland); Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (per curiam) (noting that even inadvertent, as opposed to tactical, attorney omissions do not automatically guarantee habeas relief, because "[t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight"). Due to the difficulties inherent in making this evaluation, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Further, the record establishes defense counsel did challenge the 2006 conviction, and others, on a different basis: that the convictions were overstated. In his objections filed December 21, 2011, counsel specifically argued that because the "quantity of this reducing agent is unknown …it can be assumed it was not a significant amount" because the trial court imposed a sentence of "180 days" and "[t]his sentence would seem to indicate the amount of precursor

chemical found was not of a very significant quantity." (ECF No. 149 at 2-3.) The formal

objection also notes that the "reason for the minimal sentence is not available." (ECF No. 149 at

5.)

At the sentencing hearing, counsel seemed to also argue that the 2006 conviction did not

qualify for career offender enhancement because that crime was attributable to co-defendant

Zepeda-Lopez rather than movant. The following colloquy occurred:

> [DEFENSE COUNSEL]: The second part of that is I want to clarify on the presentence report at page 13, line 42, his 2006 case. About two years ago we asked probation to run a criminal history record to see if he really was a career offender. And the interesting thing about the 2006 case, which will lead to my minor role argument, is that the case name was under Miguel Ochoa.

> Miguel Murguia-Ochoa is Michael Zepeda-Lopez. I mean, as the Court will remember, when he signed his plea agreement, he signed his true name. His name is Miguel Murguia-Ochoa.

> Miguel Ochoa was arrested with Mr. Fernando Cruz, Mr. Murguia-Ochoa here in court. And I understand flipping and swapping names, and he has used a lot of names over the years. But in fact that's what that was.

> There were four people arrested, including his girlfriend/wife at the time. So paragraph 42, when it says he was using the name Miguel Ochoa, that's not accurate. And I think probation figured out who -- he originally used his brother's name, Mr. Anguiano.

> The point is that those criminal history points go back to 2006. The person who he was arrested with and dealing with and chose to create methamphetamine was Mr. Zepeda-Lopez.

> That's who Mikey, and Michael, Miguel is, and that's who it has been in this case.

(ECF No. 177 at 26-27.)

Interestingly too, defense counsel, without specifically referencing subdivision (c)(2) of

California Health and Safety Code section 11383, used the words "reducing agent" in his formal

objection to the PSR. (ECF No 149 at 2:23.) Because those words do not appear in subdivision

(c)(1) of the statute, it can be reasonably inferred from the record that defense counsel was aware

movant's conviction involved subdivision (c)(2) rather than (c)(1), and that his actions relating to

a challenge of this conviction were strategic or tactical. Strickland, 466 U.S. at 688-89; Richter,

562 U.S. at 104.

Turning to the statutory language itself, movant next argues that subdivision (c)(2) of section 11383 of the California Health and Safety Code "does not criminalize the *manufacture* of a controlled substance itself but rather the possession of certain substances with the intent to manufacture methamphetamine." (ECF No. 262 at 5, emphasis in original.) That statement is accurate on its own, but § 4BA1.2(b) does not require manufacturing as it is written in the disjunctive: "'controlled substance offense' means an offense under federal or state law, punishable for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance … **or** the possession of a controlled substance … with intent to manufacture …." California Health and Safety Code section 11383(c)(2) prohibits the latter: "…with intent to manufacture methamphetamine or any of its analogs…, possesses hydriodic acid or a reducing agent or any product containing hydriodic acid or a reducing agent is guilty of a felony and shall be punished … for two, four, or six years." Therefore, counsel did not provide ineffective assistance for any failure to challenge the 2006 conviction on the basis that § 11383 does not require the manufacture of a controlled substance and thus it falls outside of § 4BA1.2(b) because arguing so would have been meritless. Shah v. United States, 878 F.2d 1156, 1162 (9th Cir. 1989) ("The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel" [citation omitted]); James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994) ("Counsel's failure to make a futile motion does not constitute ineffective assistance of counsel" [citation omitted]); see also Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985).

Next, movant asserts that "hydriodic acid and reducing agents themselves" are not "federal 'controlled substances,'" citing to 21 U.S.C. §§ 802(6) and 812. (ECF No. 262 at 5-6.) In a related footnote, movant states "Hydriodic acid, like ephedrine and pseudoephedrine, are not 'controlled substances, but are federal 'listed chemicals' used in the manufacture of a controlled substance" and that "[r]educing agents are neither controlled substances nor listed chemicals." (ECF No. 262 at 6 n.5.) He then concludes that a conviction for possession of hydriodic acid or a reducing agent "does not amount to possessing a federal *controlled substance* with the intent to manufacture." (ECF No. 262 at 6, emphasis in original.)

The relevant portion of 21 U.S.C. 802(6) reads: "The term "controlled substance" means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 812 specifies the Schedules of Controlled Substances. "[H]ydriodic acid is a List I chemical." United States v. Alfaro, 336 F.3d 876, 882 (9th Cir. 2003). However, in the Application Notes to § 4BA1.2, it is stated that "[u]nlawfully possessing a listed chemical with intent to manufacture a controlled substance (21 U.S.C. § 841(c)(1)) is a 'controlled substance offense.'" Thus, any challenge to movant's 2006 conviction for a violation of California Health and Safety Code section 11383(c)(2) would have been unsuccessful because hydriodic acid is in fact a controlled substance. James v. Borg, 24 F.3d at 27.

Finally, movant contends that because the "definition of methamphetamine under California law is also broader than the federal definition," California Health and Safety Code section 11383 "sweeps broader than the federal definition of a 'controlled substance offense' and cannot be used to support a career offender finding." Movant cites to "Lorenzo v. Sessions, No. 15-70814, 2019 U.S. App. Lexis 1599, at *4 (9th Cir. Jan. 17, 2019)" to support his argument. (ECF No. 262 at 7.)

Movant's citation, as quoted above, is confusing, for he appears to combine two separate holdings from the Ninth Circuit. That court originally issued an opinion in Lorenzo v. Sessions, 902 F.3d 930, 933 (9th Cir. 2018) (Lorenzo I). However, the Ninth Circuit has since withdrawn that opinion; it has been superseded by an unpublished memorandum entitled Lorenzo v. Whitaker, No. 15-70814, 2019 WL 248978 (9th Cir. Jan. 17, 2019) (Lorenzo II).

In Lorenzo I, the Ninth Circuit held that a conviction for a methamphetamine offense under California Health and Safety Code section 11378 was not a controlled substance offense under 8 U.S.C. § 1227(a) because the facial definition of methamphetamine under California law is broader than the definition of methamphetamine under the Controlled Substances Act, 21 U.S.C. § 812. See Lorenzo I, 902 F.3d at 932-33. Specifically, the federal appellate court in Lorenzo I noted that California law includes "geometric isomers" of methamphetamine, while the Controlled Substances Act does not. Id. at 934-35.

////

Lorenzo I did not consider whether "geometric isomers" exist. Rather, in Lorenzo I, the Ninth Circuit wrote that, "in the absence of any evidence -- either in the record or subject to judicial notice -- to suggest that this distinction is not material, we must assume that it is." Id. at 935 n.3. The Attorney General had asserted at oral argument, and in a petition for rehearing, that geometric isomers of methamphetamine do not in fact exist. Lorenzo II, 2019 WL 248978 at *2. The Ninth Circuit denied the petition for rehearing and withdrew its Lorenzo I opinion. Subsequently, that court issued a memorandum, explaining its ruling was "limited to the information in the administrative record" and noting that the government did not timely argue that geometric isomers of methamphetamine do not exist. Lorenzo II, 2019 WL 248978 at *2. The Ninth Circuit also noted that its memorandum did "not foreclose the government from presenting its new argument or new evidence in another case." Id. It further noted in Lorenzo II that it did "not conclude that geometric isomers of methamphetamine exist; it concludes only that the record in this case does not show that they do not exist." Id. at *2 n.2.

Neither holding is applicable here. Lorenzo I does not apply for it is no longer persuasive authority. Lorenzo II is both an unpublished memorandum decision without precedential value and limited in application to specific facts, facts that differ from those present here. Moreover, Lorenzo I was decided in 2018, nearly seven years after movant entered his guilty pleas and six years after he was sentenced in this matter. Reliance upon authority that was decided years after the events in question, and that might have had some effect, cannot serve to establish either prong in Strickland. The undersigned should, and must, evaluate counsel's conduct in the absence of hindsight (id. at 689) and in the absence of subsequent authority such as that relied upon by movant here. Counsel cannot be said to have provided ineffective assistance. Strickland, at 688-94; Richter, 562 U.S. at 104.

In sum, a 2006 California conviction for possessing hydriodic acid with intent to manufacture methamphetamine requires proof that the defendant: (1) possessed hydriodic acid or a reducing agent or any product containing hydriodic acid with (2) the specific intent to manufacture methamphetamine or one of its analogs. Cal. Health & Safety Code § 11383(c)(2); CALJIC No. 12.09.4. A conviction for the similar federal crime, pursuant to 21 U.S.C. 841(c)(1),

26

requires proof that movant: (1) possessed "a listed chemical" with (2) the intent to manufacture "a controlled substance." The California statute is not broader than its federal counterpart. Both involve an intent to manufacture and both provide for possession of a hydriodic acid. Focusing solely on the elements reveals that the California statute meets the categorical approach by providing the same or narrower elements than its federal counterpart. United States v. Leal-Vega, 680 F.3d at 1163; United States v. Pimentel-Flores, 339 F.3d at 968. Hence, a conviction pursuant to California Health and Safety Code section 11383(c)(2) amounts to a prior conviction for "a controlled substance" as provided for in § 4B1.1(a). As a result, defense counsel did not provide ineffective assistance of counsel for failing to object to the 2006 conviction on that basis. Strickland, 466 U.S. at 688-694. This claim should be denied as movant is not entitled to relief. Davis v. United States, 417 U.S. at 346.

*Evidentiary Hearing Request*

Lastly, movant claims an evidentiary hearing is warranted because his ineffective assistance of counsel claims "raise facts which occurred out of the courtroom and off the record," thus he should be permitted to elaborate on those claims. (ECF No. 228 at 28.) But as explained above, those claims are belied by the record and do not require elaboration.

IV. Conclusion

IT IS HEREBY RECOMMENDED that:

1. Movant's November 20, 2015, motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 be denied; and

2. The Clerk of the Court be directed to close the companion civil case No. 2:15-cv-02430-MCE-KJN.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If movant files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to

which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 26, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

.257